UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALEX BONILLA,

       Plaintiff,

v.                                   Case No:  6:12-cv-1649-Orl-22TBS

SHINER'S CAR WASH, SK PROPERTY,
LLC and JAGDISH SINGH,

       Defendants.
_____

<u>ORDER</u>

      This case comes before the Court on the parties' Join Motion for Approval of

Settlement (Doc. 51) and their Notice of Filing Amended Settlement Agreement and

Release of All Wage Claims (Doc. 54).   For the reasons that follow, I respectfully

recommend the Court GRANT the parties' motion and APPROVE the amended

settlement agreement filed at Docket Number 54 to the extent provided herein.

Background

      Plaintiff Alex Bonilla alleges that Defendants Shiner's Car Wash, SK Property,

LLC, and Jagdish Singh has employed him from December 2010 to the present to wash

and detail cars.   Count I of his complaint states that Defendants failed to properly

compensate him for hours worked in excess of 40 hour per week and failed to properly

compensate him for minimum wages earned as required by the Fair Labors Standards

Act, 29 U.S.C. §201 et. seq. ("FLSA").   Count II is a claim for unjust enrichment.

Defendants deny that they employed Plaintiff or that they failed to properly compensate

him under the FLSA.   (Doc. 10).   In his answer to the Court's interrogatories, Plaintiff

said he was owed $7,048.41 in unpaid wages, $7,048.41 in liquidated damages, and $5,000 in attorney fees, for a total of $19,096.82.   (Doc. 17 at 3).

The parties negotiated and entered into a Settlement Agreement and General Release (the "First Agreement") to compromise and settle this controversy.   (Doc. 51 at 6).   After reviewing the First Agreement, I entered an Order expressing my concerns about its release and confidentiality provisions.   (Doc. 52).   The parties have since amended their agreement (the "Second Agreement") to settle Plaintiff's FLSA claim, and have removed the offending provisions.   However, they have now added reciprocal non-disparagement clauses.   (Doc. 54-1 ¶¶ 2.E, 3.E).   Under the terms of the Second Agreement, Defendants will pay Plaintiff $2,500 in unpaid wages, $2,500 in liquidated damages, and $5,000 in attorney fees.

## Legal Standard

Congress enacted the FLSA to eliminate labor conditions it deemed to be "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."   29 U.S.C. § 202.   The FLSA provides for the payment of overtime to non-exempt employees at the rate of not less than one and one-half times the individual's regular rate for hours worked in excess of forty per week. Id. § 207(2).   Remedies for violation of the FLSA include the ability of an employee to maintain an action for damages, an equal amount for liquidated damages, attorney's fees and costs against an employer.   29 U.S.C. § 216(b).

The United States Court of Appeals for the Eleventh Circuit has explained that an FLSA claim can be settled and resolved in two ways.   First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.   29 U.S.C. § 216(c); Lynn's Food

- 2 -

Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir. 1982).   Second, an employee may settle and waive claims under the FLSA if the parties present to a district court a proposed settlement agreement, and the district court enters a judgment approving the settlement.   Id.

Before approving a settlement, the district court must first scrutinize the parties' agreement and determine whether it is "fair and reasonable resolution of a bona fide dispute" of the FLSA issues.   Id. at 1354-55.   If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "to promote the policy of encouraging settlement in litigation."   Id. at 1354. The nature of this lawsuit prompts the district court's review of the settlement agreement rather than an examination conducted by the Secretary of Labor.

In determining whether a settlement is fair and reasonable, the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007).   There is a strong presumption in favor of finding a settlement fair.   Id. (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)).

### Discussion

Even if the Court tries this case, it probably will not know as much as the parties do about this dispute or the factors motivating them to settle.   Consequently, the Court must place considerable reliance upon the parties' representations.   Here, I find no evidence of fraud or collusion in the making of the Second Agreement.   All parties are represented

by counsel who claim experience in the litigation of labor claims, and these attorneys are obligated to vigorously represent the interests of their clients.   (Doc. 51 at 2-3). Defendants clearly dispute Plaintiff's claims and whether he is entitled to any recovery at all.   If the case does not settle, then the parties should reasonably anticipate going to trial next month, and the probability of their success on the merits is uncertain.   In addition, each party agrees their settlement is a fair and reasonable compromise.   These are all indicia of a settlement made at arms-length.   And, while the amount Plaintiff has agreed to accept in settlement is significantly less than what he claimed in his answers to the Court's interrogatories, he is achieving finality and a favorable result in which he participated in the outcome.   Accordingly, I find the financial terms of the Second Agreement to be a "fair and reasonable resolution of a bona fide dispute."

The parties have removed the pervasive release and confidentiality provisions which gave the Court pause.   But, they have added reciprocal non-disparagement clauses which provide that the parties will not "undertake any disparaging conduct directed at [the opposing party] and to refrain from making any negative or derogatory statements concerning [the opposing party].   These provisions impose a form of confidentiality on the parties.   In Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1242 (M.D. Fla. 2010), the court explained:

> Because of worry that settling with one employee will encourage other employees to assert FLSA rights, the employer may seek to maintain the confidentiality of the settlement agreement.   But a confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the "private–public" rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute.   To further Congress's intent, the Department of Labor requires the employer of an employee covered by the FLSA to display conspicuously in the workplace a detailed notice of the employee's FLSA rights. By including a confidentiality provision, the employer

> thwarts the informational objective of the notice requirement by
> silencing the employee who has vindicated a disputed FLSA right.

Id. (footnotes omitted).

Other courts have found that non-disparagement clauses are offensive because they contemplate a "judicially imposed 'prior restraint' in violation of the First Amendment." Valdez v. T.A.S.O. Props., Inc., No. 8:09-cv-2250-T-23TGW, 2010 WL 1730700 *1 n.1 (M.D. Fla. Apr. 28, 2010). Consequently, non-disparagement provisions are frequently struck from FLSA settlement agreements. See Nichols v. Dollar Tree Stores, Inc., No. 1:13-cv-88 (WLS), 2013 WL 5933991, *3 (M.D. Ga. Nov. 1. 2013); Housen v. Econosweep Maint. Serv., Inc., No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, *2 (M.D. Fla. June 6, 2013).

For these reasons, I recommend that the Court sever and strike paragraph 2.E from the Second Agreement. There are several reasons why I am not recommending that the Court sever and strike the reciprocal clause running in favor of Plaintiff. First, Defendants are the employers in this situation and thus, not the beneficiaries of the concerns the FLSA addresses. Second, it does not appear that Plaintiff enjoys any inherent unequal bargaining power over Defendants. Third, Defendants' promise not to disparage Plaintiff protects him against Defendants giving Plaintiff a negative review should Defendants be contacted by any future, prospective employer of Plaintiff.

The Court has the ability to sever and strike paragraph 2.E becauseof Paragraph 5 of the Second Agreement, in which the parties agreed that "[i]n the event that any portion of this Agreement is found to be unenforceable, the remaining portions of the Agreement shall remain in full force and effect." (Doc. 54-1 ¶5).

In FLSA suits for unpaid minimum wages or unpaid overtime wages, "[t]he court …

shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."   29 U.S.C. § 216(b). Courts have interpreted this provision to mean that "fee awards [are] mandatory for prevailing plaintiffs."   Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985).   Under the FLSA, the Court reviews the reasonableness of counsel's legal fees to insure that counsel is adequately compensated for services rendered, and that no conflict of interest taints the claimant's recovery.   Silva v. Miller, 307 F. App'x. 349, 351 (11th Cir. 2009).   "However, an in depth analysis is not necessary unless the unreasonableness [of the attorney's fee] is apparent from the face of the documents." Perez v. Nationwide Prot. Serv., 6:05-cv-328-Orl-22JGG, 2005 U.S. Dist. LEXIS 45849, *1 (M.D. Fla. Oct. 31, 2005).   The parties represent that Defendants will pay Plaintiff's attorney fee of $5,000.   The parties have agreed that this amount was negotiated separately from Plaintiff's recovery without regard to the amount of the settlement sum. This is sufficient to establish the reasonableness of the fee and that Plaintiff's recovery was not adversely affected by the amount of fees paid to her counsel.   See Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009).

## Recommendation

For these reasons, I respectfully recommend the Court:

1. SEVER paragraph 2.E from the Second Agreement;

2. GRANT the parties' Joint Motion for Approval of Settlement (Doc. 51), and APPROVE the Second Agreement, as amended;

3. DISMISS this action with prejudice; and

4. DIRECT the Clerk to close the file.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and

M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on April 23, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record